```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
BMADDOX ENTERPRISES LLC,            :   17 Civ. 1889 (RA)(HBP)

                  Plaintiff,        :   OPINION
                                        AND ORDER
     -against-                      :

MILAD OSKOUIE, et al.,              :

                  Defendants.       :
-----------------------------------X
```

I. Introduction

By notice of motion dated February 1, 2018, defendants request a six-month stay in this action because defendant Milad Oskouie, the lone individual defendant and the sole officer of the defendant companies, has allegedly become ill (Motion to Stay the Action, dated Feb. 1, 2018 (Docket Item ("D.I.") 87) ("Mot."); Defendants' Memorandum of Law in Support of Motion to Stay, dated Feb. 1, 2018 (D.I. 88) ("Def. Mem.") at 2). Plaintiff opposes defendants' Motion on the ground that Oskouie's claim of illness is fabricated (Plaintiff's Memorandum of Law in Opposition to the Motion, dated Feb. 9, 2018 (D.I. 93) ("Pl. Mem.") at 2). For the foregoing reasons, defendants' motion is denied.

## II. Facts[1]

On or about December 8, 2017, plaintiff's counsel, Anderson Duff, Esq., spoke with defendants' then-counsel, Justin Mercer, Esq., about the status of defendants' document production; Mercer represented that he had received responsive documents from his clients (Declaration of Anderson Duff, Esq., dated Feb. 9, 2018 (D.I. 94) ("Duff's First Decl.") ¶ 2). On January 15, 2018, Duff again emailed Mercer to ask when he could expect to receive materials (Email of Anderson Duff, Esq., to Justin Mercer, Esq., dated Dec. 8, 2017, annexed as Ex. 1 to Duff's First Decl.). Mercer did not respond because, unbeknownst to Duff at that time, Mercer's representation of defendants had been terminated. Mercer was replaced by new counsel, Saul Roffe, Esq. Roffe and Duff exchanged a series of emails on January 17, 2018, during which Roffe claimed, for the first time, that Oskouie had been diagnosed with cancer and that, according to Oskouie's physician, he would be unable to work with Roffe on the case (Email Chain between Anderson Duff, Esq., and Saul Roffe, Esq., dated Jan. 17, 2018 ("Jan. 17, 2018 Email Chain"), annexed as Ex. 2 to Duff's First Decl.). Roffe alerted Duff that he intended to

---

[1] I recite only those facts relevant to my resolution of the pending motions. The reader's knowledge of the factual and procedural background of this case is presumed.

2

file a motion to stay the action for six months (Jan. 17, 2018 Email Chain at 3).

Defendants now seek to stay this action for six months (Mot.). Specifically, defendants claim that Oskouie was diagnosed with Stage B Leukemia (Def. Mem. at 2).[2] As a result, defendants claim that he will be bed-ridden and will undergo chemotherapy and, possibly, surgery (Def. Mem. at 2). Defendants claim, therefore, that Oskouie will be physically and mentally unable to participate in any meaningful way in this matter (Def. Mem. at 2). Furthermore, defendants appear to argue that there is no one who could assist Oskouie because Oskouie is the sole officer of the defendant corporations (Def. Mem. at 2).

In support of their motion, defendants proffer a declaration of Oskouie, in which Oskouie states under penalty of perjury that he was diagnosed with Stage B Leukemia (Declaration

---

[2]Leukemia is a "progressive, malignant disease of the blood-forming organs, characterized by distorted proliferation and development of leukocytes and their precursors in the blood and bone marrow." Dorland's Illustrated Medical Dictionary, 1026 (32nd ed. 2012) ("Dorlands"). Chronic lymphocytic leukemia is "a common form [of leukemia] mainly seen in the elderly; symptoms include lymphadenopathy, fatigue, renal involvement and pumlmonary leukemic infiltrates." Dorlands at 1027. Chronic lymphotic leukemia reaches Stage B when "[three] or more areas of lymphoid tissue are enlarged, with no anemia or thrombocytopenia." How Is Cancer Staged, American Cancer Society, available at https://www.cancer.org/cancer/chronic-lymphocytic-leukemia/detection-diagnosis-staging/staging.html (last visited Feb. 22, 2018).

3

of Milad Oskouie, dated Feb. 1, 2018 (D.I. 89) ("Oskouie's First Dec.") ¶ 2). Oskouie reports that he takes approximately 16 pills each day, suffers from memory loss, fatigue, frequent and severe pain and that he has difficulty reading, concentrating and retaining information (Oskouie's First Decl. ¶ 2). In light of these limitations, defendants assert that Oskouie is "physically and mentally unable to provide the necessary energy and focus" to participate in this action (Def. Mem. of Law at 4).

Defendants also proffer a letter from an individual who claims to be Oskouie's oncologist (the "doctor's note"), Dr. Ali Reza Yavari Nasab, who is located in Tehran, Iran (Letter of Dr. Ali Reza Yavari Nasab to the Honorable Ronnie Abrams, dated Dec. 28, 2017 ("Nasab Letter"), annexed as Ex. 1 to Declaration of Saul Roffe, Esq., dated Feb. 1, 2018 (D.I. 90) ("Roffe Decl.")). The doctor's note states, in pertinent part:

> The undersigned hereby certifies under the penalty of perjury that:
>
> I am a registered Oncologist M.D.
>
> I personally examined Milad Oskouie, age 31, male on various occasions in 2017 and have diagnosed him with Stage B Leukemia.
>
> Based on the information and review, I certify that the diagnosis will continue to have a severe impact on his ability to function. In particular, he will not be able to attend any court hearing or prepare for any court case for at least a period of 6 months.

> I hereby certify that the evaluation of diagnosis, cognition, and function is within the scope of my professional competence based on my education, training and experience.

The doctor's note also provides Dr. Nasab's telephone number, address and a six digit "medical code" or license number (Nasab Letter at 3).[3]

Plaintiff opposes defendants' Motion, arguing that Oskouie has fabricated a cancer diagnosis in a nefarious effort to stall this action (Pl. Mem. at 2). First, plaintiff claims that Dr. Nasab does not exist and that the doctor's note, therefore, is fraudulent (Pl. Mem. at 2). To prove this, plaintiff hired Mohammad Mahdi, an individual in Iran, as a "freelancer", to translate and investigate the authenticity of the doctor's note (Declaration of Brandon Maddox, dated Dec. 9, 2018 (D.I. 97) ("Maddox Decl.") ¶¶ 2-4). Through his efforts, Mahdi discovered that: (1) Dr. Nasab's phone number connects to the offices of AtlasTech Co., an Iranian elevator repair company; (2) Dr. Nasab's office address does not exist and (3) Dr. Nasab does not appear on a list of all registered, male oncologists practicing

---

[3] Defendants also submit a number of informational publications from the American Cancer Society and the National Cancer Center, which address the diagnosis, prognosis, causes, symptoms and treatment of Stage B Lymphoma (see e.g., Lymphocytic Leukemia Informational Packet of the American Cancer Society, dated Apr. 11, 2016, annexed as Ex. 2 to Roffe Decl.)

in the city of Tehran compiled by the Islamic Republic of Iran Medical Council ("IRIMC") (Declaration of Mohammad Mahdi, dated Feb. 9, 2018 (D.I. 95) ("Mahdi Decl.") ¶¶ 3, 5-6; Pl. Mem. at 2-3). In addition, Mahdi received a letter from Dr. Gol Alizade of the IRIMC, dated February 5, 2018, stating that no oncologist by the name of Ali Reza Yavari Nasab with the medical license number provided in the doctor's note practices in Iran (Original and Translated Letter of Dr. Gol Alizade to Mohammad Mahdi, dated Feb. 5, 2018 ("IRIMC Letter"), annexed as Ex. B to Mahdi Decl.; see Mahdi Decl. ¶ 3). Dr. Alizade's letter provides, in pertinent part:

> Respectfully, and according to the document shown to us. [sic] We confirm that Oncologist "Ali Reza Yavari Nasab" with the Medical Code "671239" does not exist and the information is unreal.
>
> Dr. Gol Alizade

The translation of Dr. Alizade's letter has a stamp-mark indicating that it was translated by a "certified translator" (IRIMC Letter).

Second, plaintiff notes that the doctor's note indicates that Dr. Nasab claims to have examined Oskouie throughout 2017, but Oskouie did not inform plaintiff's counsel of the illness until January 17, 2018, and did not inform the Court until February 1, 2018 (Pl. Mem. at 3-4). Plaintiff argues that

6

defendants' delay suggests that Oskouie's diagnosis was concocted in an effort to stall the proceedings (Pl. Mem. at 3-4). In particular, plaintiff notes that on August 16, 2017, Oskouie submitted a detailed budget in support of his request that the Court lift an Order restraining his assets (Pl. Mem. at 4; Declaration of Milad Oskouie, dated Aug. 16, 2017 (D.I. 48)). Although it would have been natural for Oskouie to have included information concerning his medical expenses in that submission in order to strengthen his argument in favor of the release of his assets, Oskouie made no mention of his illness or medical costs in his submission (Pl. Mem. at 4). In addition, plaintiff argues that it defies reason that Oskouie, who resides in London, United Kingdom, would choose to receive his medical treatment in Iran, especially considering that Oskouie has never made any mention of a connection or intent to travel to Iran, let alone for medical treatment (Pl. Mem. at 3).

Finally, plaintiff asserts that Oskouie has directed an online smear and harassment campaign against plaintiff, plaintiff's counsel, plaintiff's counsel's clients and plaintiff's counsel's mother, and that Oskouie's tactics here fit squarely within this pattern of misconduct (see STD Registry Report dated Jan. 31, 2018, annexed as Ex. 6 at 3 to Duff's First Decl.).

7

In response, defendants maintain that Oskouie's illness is legitimate, the doctor's note is authentic and Dr. Nasab exists (Reply Memorandum of Law in Support of the Motion, dated Dec. 14, 2018 (D.I. 103) ("Reply Mem.")). Defendants offer to submit medical records under seal that will confirm Oskouie's diagnosis. (Reply Mem. at 2-3). They have also offered to provide confirmation from the IRIMC that Dr. Nasab is a licensed Iranian physician, but they note that such information has been difficult to obtain due to the "holidays in Iran and the bureaucratic process" (Reply Mem. at 2).

Defendants also accuse plaintiff of harassing Dr. Nasab by asking him for privileged, medical information (Reply Mem. at 2). In addition, defendants argue that the IRIMC Letter, upon which plaintiff relies, is fraudulent (Reply Mem. 2-3). Defendants enlisted Amir Jaafari, an individual involved in the banking and finance industry in Iran who "frequently work[s] with and exchange[s] documents with the Iranian government [, and, thus, is] fully familiar with the form and format of Iranian governmental documents and letters," to address the authenticity of the IRIMC letter (Declaration of Amir Jaafari, dated Feb. 14, 2018 (D.I. 105) ("Jaafari Decl.") ¶ 1). Jaafari claims that the IRIMC Letter is itself fraudulent for several reasons. First, he noted that official Iranian documents and communications are

8

required under Iranian law to have an "official legal certification stamp", which the IRIMC Letter lacks (Jaafari Decl. ¶ 4). Second, the IRIMC Letter provides a telephone number for the IRIMC that uses a telephone number format that has not been used in Iran since the mid-1980s (Reply Mem. at 3). Third, Jaafari claims that Dr. Alizade, the author of the IRIMC Letter, is in charge of "procurement" and, thus, is unlikely to be responsible for confirming who is or is not licensed to practice medicine in Iran (Jaafari Decl. ¶ 3). Finally, Jaafari asserts that the translation of the IRIMC Letter "lacks the certification required by translators" (Jaafari ¶ 5).[4]

Defendants also appear to argue that Mahdi is not credible. Defendants point out, among other things, that Mahdi is not a licensed attorney in Iran, despite the fact that no where in any of plaintiff's submissions is Mahdi represented as such (Reply Mem. at 2).[5] In addition, defendants cast doubt on whether Mahdi actually lives in Iran (Declaration of Milad

---

[4]Defendants also argue that the IRIMC Letter must be fraudulent because it predates the date on which plaintiff's counsel first learned of Oskouie's diagnosis. This is incorrect. Roffe informed Duff that Oskouie was diagnosed with cancer and that he would be requesting a stay of this action on January 17, 2018 (Jan. 17, 2018 Email Chain at 3); the IRIMC Letter is dated February 5, 2018 (IRIMC Letter).

[5]Mahdi noted in his declaration that he completed a Bachelor of Arts at the University of Tehran in 2015, with a concentration in Law (Mahdi Decl. ¶ 1).

Oskouie dated Feb. 14, 2018 (D.I. 104) ("Oskouie's Second Decl.") ¶ 4).

III. Analysis

   A. Legal Standard

"A district court has the inherent power to 'control the disposition of the causes on its own docket with economy of time and effort for itself, for counsel, and for litigants.'" TradeWinds Airlines, Inc. v. Soros, 08 Civ. 5901 (JFK), 10 Civ. 8175 (JFK), 2011 WL 309636 at *3 (S.D.N.Y. Feb. 1, 2011) (Keenan, D.J.), quoting, Landis v. North American Co., 299 U.S. 248, 254 (1936). That power includes the power to stay an action. See Landis v. North American Co., supra, 299 U.S. at 248; accord WorldCrisa Corp. v. Armstrong, 129 F.3d 71, 76 (2d Cir. 1997). District Courts balance various factors in deciding whether to grant a motion to stay, including:

> (1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation, and (5) the public interest.

Kappel v. Comfort, 914 F. Supp. 1056, 1058 (S.D.N.Y. 1996), quoting Volmar Distribs. v. N.Y. Post Co., 152 F.R.D. 36, 39

(S.D.N.Y. 1993). "In balancing these factors, 'the basic goal is to avoid prejudice.'" Tradewinds Airlines, Inc. v. Soros, supra, 2011 WL 309636 at *3, quoting Kappel v. Comfort, 914 F. Supp. at 1058.

The defendants have failed to submit adequate evidence that Oskouie has been diagnosed with and will require treatment for Stage B Leukemia and, thus, have failed to demonstrate that a stay would result in any judicial economies or prevent any prejudice to defendants. First, defendants do not dispute, or even directly address, any of the concerns raised by plaintiff regarding the authenticity of the doctor's note. Defendants do not dispute that Dr. Nasab's telephone number does not connect to a medical office, but rather to an elevator repair company. Defendants do not contest that Dr. Nasab's address is illegitimate. Instead, defendants assert, based on Jaafari's analysis, that the IRIMC Letter is fraudulent and, therefore, plaintiff's attack on the authenticity of the doctor's note should not be believed. As an initial matter, although Jaafari may review official Iranian documents in connection with his involvement in the financial and banking sector there, it does not follow, as a matter of logic, that he would be well versed in documents pertaining to the practice of medicine in Iran or IRIMC protocols. For example, Jaafari provides no factual basis for his

11

conclusory assertion that Dr. Alizade is "unlikely" to be authorized to write the IRIMC Letter because he is head of "procurement". Indeed, Jaafari is not a physician, nor does he claim to have any experience or familiarity with the IRIMC. Moreover, defendants' principal argument is that the IRIMC Letter lacks legally required aspects of official Iranian communications and, thus, must be fraudulent. Defendants' argument is valid only if the IRIMC Letter is, in fact, an official Iranian communication. It is not. According to the IRIMC's website, which is easily accessible, the IRIMC is a "Non[-]Governmental Organization ("NGO") which is responsible for licensing, authorization and registration of the all [sic] health care professionals . . . to practice in Iran." About Us, The IRIMC, available at http://irimc.org/DynamicContent.aspx?mi=8c175a31-deb7-48da-b48c-f64ffb4c24b6&ci=716ae5c1-b53b-4882-a48a-56e9f9808eae&LANG=EN (last visited, Feb. 22, 2018).[6] In light of the IRIMC's NGO status, the fact that the IRIMC Letter is formatted differently than official communications of the Iranian government is not, without more, evidence of fraud.

---

[6] Jaafari also cites to the IRMIC website in his declaration to demonstrate that Dr. Alizade is in charge of "procurement' for the IRIMC (Jafaari Decl. ¶ 3).

12

Although defendants claim that the doctor's note supports the conclusion that Oskouie will be physically and mentally unable to participate in this action, the note provides no details with respect to Oskouie's limitations or his treatment plan. The note states that the Stage B Leukemia "will continue to have a severe impact upon [Oskouie's] ability to function," but does not explain what those impacts will be. These vague statements concerning Oskouie's diagnosis, condition, prognosis and treatment cast serious doubt as to the authenticity of the doctor's note. Even assuming the veracity of the doctor's note, it does not provide adequate detail to support the conclusion that Oskouie is so impaired that defendants would be prejudiced by proceeding in this action.

Finally, defendants do not explain why Oskouie is receiving medical treatment in Iran, as opposed to his country of residence, the United Kingdom, or his country of origin, Australia. Last year, Oskouie submitted a declaration in which he stated that he is "an Australian businessman and non-practicing lawyer residing in the [United Kingdom]" (Declaration of Milad Oskouie, dated July 25, 2017, (D.I. 34) ¶ 3). One would reasonably expect an individual in Oskouie's position to seek medical treatment in either the country in which he resides or in which he has citizenship. At the very least, he should be able to

explain why he decided to obtain treatment in another country, let alone a country with which he apparently has no connection.

Accordingly, defendants' application for a stay on the ground that Oskouie is physically and mentally unable to participate in this action due to illness is denied without prejudice to renewal. The Clerk of the Court is respectfully requested to mark D.I. 87 closed.

Dated: New York, New York
March 6, 2018

SO ORDERED

_____
HENRY PITMAN
United States Magistrate Judge

Copies transmitted to:

All Counsel of Record